```
           IN THE UNITED STATES DISTRICT COURT
         FOR THE SOUTHERN DISTRICT OF ALABAMA
                    NORTHERN DIVISION
```

ELKIMYA ABDELAZIZ,                   :

    Petitioner,                      :

v.                                   :
                                   CIVIL ACTION 06-0747-WS-M
ALBERTO GONZALES,                    :
MICHAEL CHERTOFF,
WARDEN DAVID O. STREIFF,[1]          :

    Respondents.                     :


                    REPORT AND RECOMMENDATION

      This is an action under 28 U.S.C. § 2241 by Elkimya Abdelaziz, a citizen and native of Morocco, who has been detained by the U.S. Department of Homeland Security (Doc. 1, ¶ 6).[2]  This action has been referred for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(c) and is now ready for consideration.  The record is adequate to determine Petitioner's claims; no evidentiary hearing is required.  It is recommended that the instant petition be dismissed.

      In his petition, filed on November 1, 2006, Petitioner

---

[1] Bill Bateman is no longer the Warden of the Perry County Correctional Center.  Accordingly, pursuant to the provisions of Rule 25(d) of the Federal Rules of Civil Procedure, David O. Streiff, as Warden of that facility, is substituted for Bateman as a proper Respondent in this action.

[2] Petitioner has been in the actual custody of David O. Streiff, Warden of the Perry County Correctional Center in Uniontown, Alabama. "Whenever a § 2241 habeas petitioner seeks to challenge his present physical custody with the United States, he should name his warden as respondent and file the petition in the district of confinement." *Rumsfeld v. Padilla*, 542 U.S. 426, 447 (2004).

asserts that he was taken into custody by agents of the U.S. Bureau of Immigration and Customs Enforcement (hereinafter *ICE*) on April 14, 2006, pursuant to a finding that he should be removed from this country (*see* Doc. 1).  Petitioner maintains that he has been detained for too long, that such detention is improper, and that he should be released (*id.* at pp. 4-6).

Respondents subsequently filed a Response, stating that Petitioner is being detained through his own failure to cooperate with United States authorities (Doc. 12).  More specifically, Respondents assert that Abdelaziz has resisted efforts to repatriate him to his native country of Morocco (*id.*).  Respondents argue that Petitioner's confinement is proper, in light of Abdelaziz's actions, and that this action should be dismissed as he is unable to satisfy his burden of proving that he should be released (*id.* at pp. 5-9).

The evidence of record demonstrates that Petitioner arrived in this country in 1975, married a U.S. citizen, and "obtained lawful permanent resident status" on November 22, 1976 (*see* Doc. 29, p. 2).[3]  Abdelaziz and his wife were divorced in 1983 (*see id.*).  Petitioner left the United States for Morocco in 1993 and returned to this country in 1997, but the Immigration and Naturalization Service determined that he was no longer a bona

---

[3]This document is an order by the U.S. Second Circuit Court of Appeals, entered on April 12, 2007, which denies Petitioner's Motion for Bail.

fide permanent resident (*see id.* at pp. 2-3).  On February 15, 2000, a U.S. Immigration Judge found that Petitioner was not a U.S. Citizen and should be deported to his native country of Morocco (*see* Doc. 12, Claude Declaration, ¶ 3).[4]  Following the dismissal of Petitioner's appeal of the Removal Order, Abdelaziz was Ordered to "produce himself for removal on December 13, 2002 at the Buffalo ICE field office.  Petitioner failed to do [] as ordered" (*id.* at ¶¶ 3-4).  Abdelaziz was arrested, as a fugitive, on August 6, 2003 (*id.* at ¶ 5).  On August 18, 2003, the Moroccan Consulate issued travel documents for Petitioner to be repatriated; the documents were good for three months (*see id.* at ¶ 7).  On September 4, 2003, Petitioner filed a habeas petition which necessitated that his removal, scheduled for September 10, be cancelled (*id.* at ¶ 8).  On March 4, 2004, Abdelaziz was placed on supervised release with ICE; he was to report every month (*id.* at ¶ 10).  On June 10, 2005, Petitioner's habeas petition was terminated and transferred to the Second Circuit Court of Appeals which dismissed it on February 16, 2006 (*id.* at ¶¶ 11-12).  Abdelaziz was again taken into custody on April 14, 2006 by ICE; travel documents were requested from the Moroccan Consulate on April 26 (*id.* at ¶¶ 13-14).  On June 29, 2006, a Stay of Removal and a Reinstatement of his Appeal were granted by

---

[4]This declaration was made by Ronald Claude, an ICE Deportation Officer assigned to Abdelaziz's case (Doc. 12, Claude Declaration ¶ 1).

the Second Circuit Court of Appeals (Doc. 30, p. 4; Doc. 31, Exhibit 1).[5]  That stay was apparently still in effect as of August 14, 2007 (*see id.* at pp. 4-7).  Argument is scheduled to be heard by the Second Circuit Court of Appeals in Abdelaziz's case on October 29, 2007 (*id.* at p. 7).

An Order was entered on August 31, 2006, on ICE letterhead, from the Director of the Office of Detention and Removal Operations, stating that Abdelaziz should remain in custody as he was considered to be a flight risk; this opinion was based on his prior conduct (Doc. 13, Claude Decl., ¶ 16; *see also* Doc. 31, Exhibit 2).  Claude, an ICE Deportation Officer handling Petitioner's case, has asserted that ICE has "repatriated citizens to Morocco in the past and will be able to obtain a travel document, having done so on a previous occasion" (*id.* at ¶ 17).  More recently, Respondents have asserted that a travel document, which was still in effect as of August 29, 2007, had been issued for Petitioner to be deported to Morocco once his litigation was concluded (*see* Doc. 28, p. 1).[6]

The United States Supreme Court, in *Zadvydas v. Davis*, 533 U.S. 678, 687-88 (2001), held that 28 U.S.C. § 2241 confers

---

[5]Document 30 is the docket sheet for Petitioner's case in the Second Circuit Court of Appeals.  Document 31, Exhibit 5 is a copy of the information sheet on which the Second Circuit Court of Appeals granted Abdelaziz's Motion for Reinstatement of the Appeal and a Stay of Deportation.

[6]Respondents have failed, as of yet, to provide supporting documentation for this assertion.

4

jurisdiction on federal courts to entertain actions such as this. In interpreting 8 U.S.C. § 1231,[7] the *Zadvydas* Court held that the statute "limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States. It does not permit indefinite detention." *Zadvydas*, 533 U.S. at 689. The Court went on to hold that "six months [was] a presumptively reasonable period of

---

[7] The Court notes that 8 U.S.C. § 1231, entitled "Detention and removal of aliens ordered removed," states, in pertinent part, as follows:

> (a) Detention, release, and removal of aliens ordered removed
>    (1) Removal period
>       (A) In general
>          Except as otherwise provided in this section, when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the "removal period").
>       (B) Beginning of period
>          The removal period begins on the latest of the following:
>             (i) The date the order of removal becomes administratively final.
>             (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.
>             (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.
>       (C) Suspension of period
>          The removal period shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal.

8 U.S.C.A. § 1231.

time to detain a removable alien awaiting deportation" pursuant to § 1231.  See *Akinwale v. Ashcroft*, 287 F.3d 1050, 1051 (11th Cir. 2002).  The *Zadvydas* Court further stated, however, that "an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future."  *Zadvydas*, 533 U.S. at 701.

In *Akinwale*, the Eleventh Circuit Court of Appeals held that the six-month-period "must have expired at the time [the Petitioner's] petition was filed in order to state a claim under *Zadvydas*."  *Akinwale*, 287 F.3d at 1052.  The *Akinwale* Court also noted that the six-month-period could be interrupted by a petitioner's motion for a stay of deportation or removal; this interruption would necessarily include whatever time was needed for the court, to which such motion had been made, to rule.  *Akinwale*, 287 F.3d at 1052 n.4.

Respondents present two arguments in asserting that Petitioner has not met his burden of showing that he should be released.  The first is that Abdelaziz is a flight risk, apparently based on Petitioner's failure to present himself for deportation on December 13, 2002 and arrest some eight months later as a fugitive.  However, the Petitioner was later placed on supervised release for a period of two years, after having fled deportation, with no apparent problems.  The Court has given Respondents an opportunity to address this apparent inconsistency in their argument (Doc. 23), but no further argument has been

6

made.  In any event, it is undisputed that Petitioner was previously released pending deportation and given the opportunity to report but he failed to do so. However, in light of the Court's disposition of the second argument, the Court's ruling on the first argument is of no moment.

Respondents' second—and main—argument is Petitioner has failed to meet his burden under *Zadvydas*.  Though Respondents candidly admit that Petitioner has been detained for a period of more than six months (Doc. 12, pp. 6-7), they argue that Abdelaziz has not satisfied his burden of proving that "there is no significant likelihood of removal in the reasonably foreseeable future."  *Zadvydas*, 533 U.S. at 701.

The thrust of Respondents' argument is that Petitioner would have already been repatriated but for his own litigation to prevent it.  The evidence supports this assertion.  The Court notes the Supreme Court's instruction with regard to this issue: "The habeas court must ask whether the detention in question exceeds a period reasonably necessary to secure removal.  It should measure reasonableness primarily in terms of the statute's basic purpose, namely, assuring the alien's presence at the moment of removal."  *Zadvydas*, 533 U.S. at 699.

The Court notes that Petitioner has been in custody since April 14, 2006.  That is more than eighteen months.  The Court also respects Abdelaziz's right to avail himself of the legal system to prevent—or forestall—his deportation.  Nevertheless, it

7

does not mean that he should be the beneficiary of his actions. More specifically, as Respondents have shown that they are ready to deport Petitioner as soon as his appeals are concluded, the Court finds that Petitioner has failed to demonstrate that there is no significant likelihood of his removal in the reasonably foreseeable future.

Therefore, after having considered all pleadings of record and the various argument submitted, it is recommended that this petition be denied and that this action be dismissed as Petitioner has failed to demonstrate that there is no significant likelihood of his removal in the reasonably foreseeable future. It is further recommended that judgment be entered in favor of Respondents Alberto Gonzales, Michael Chertoff, and David O. Streiff and against Petitioner Elkimya Abdelaziz.

MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS
AND RESPONSIBILITIES FOLLOWING RECOMMENDATION
<u>AND FINDINGS CONCERNING NEED FOR TRANSCRIPT</u>

1.  **Objection**.  Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the clerk of court.  Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge.  *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982)(*en banc*).  The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

>  A party may object to a recommendation entered by a
>  magistrate judge in a dispositive matter, that is, a
>  matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing

a "Statement of Objection to Magistrate Judge's Recommendation" within ten days after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed <u>de novo</u> and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.   **Transcript (applicable where proceedings tape recorded)**.  Pursuant to 28 U.S.C. § 1915 and Fed.R.Civ.P. 72(b), the magistrate judge finds that the tapes and original records in this action are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

DONE this 7th day of September, 2007.

s/BERT W. MILLING, JR.
UNITED STATES MAGISTRATE JUDGE

9